Per Curiam.

At the outset of his hearing before the Master Commissioners, petitioner presented the following motion:
“Relator moves that case No. 37817 be heard before a full complement of Supreme Court Justices, or that the Ohio Supreme Court relinquish jurisdiction on said action, thereby admitting that the state of Ohio fails to provide remedy for indigent prisoners; in order that said action be given a hearing before a competent federal tribunal.”
Petitioner was informed that for the purpose of the hearing before the Master Commissioners the motion would be overruled, and that he could proceed to argue the merits of his petition. This the petitioner refused to do, electing to stand on his motion. He was thereupon informed that the cause would be considered on the petition and the briefs submitted by counsel, and that the commissioners ’ report would be based thereon.
Inasmuch as the power of the Supreme Court to follow the procedure adopted by it in its rules is questioned frequently, it might be well to explain the power to refer cases to commissioners and the functions of the commissioners in cases such as this.
It is fundamental that a court has the inherent power to refer original actions in which the parties are not entitled to a trial by jury to Master Commissioners who shall hear the evidence and prepare findings of fact and conclusions of law based thereon. 47 Ohio Jurisprudence (2d), 91, References, Section 11.
The court said in Ex parte Peterson, Recr., 253 U. S., 300, 312:
“Courts have (at least in the absence of legislation to the contrary) inherent power to provide themselves with appropriate instruments required for the performance of their *284 duties. Compare Stockbridge Iron Co. v. Cone Iron Works, 102 Massachusetts, 80, 87-90. This power includes authority to appoint persons unconnected with the court to aid judges in the performance of specific judicial duties, as they may arise in the progress of a cause. From the commencement of our government, it has been exercised by the federal courts, when sitting in equity, by appointing, either with or without the consent of the parties, special masters, auditors, examiners and commissioners.” See, also, State, ex rel. Abeille Fire Ins. Co., v. Sevier, Judge, 335 Mo., 269, and Morgan v. United States, 298 U. S., 468.
The Ohio Supreme Court, pursuant to such power, in October of 1961 amended Section 8 of Rule 2 to read in part as follows:
< < Original actions may be referred by the court to a regular or special Master Commissioner for hearing and argument. Such commissioner shall, after such hearing and argument, report therewith to the court in writing his conclusions on the law and facts involved in the issues. Copies of such report shall be mailed to each party or his attorney of record. Exceptions thereto may be taken by either party within 20 days of the mailing thereof, and upon consideration of such report and exceptions, if any, the court may confirm, modify or set it aside. ’ ’
It requires only an examination of this rule to determine that the contention that cases such as this are decided by the commissioners and not by the court is completely untenable. No final determination is made by the commissioners. The full court, after an examination of the pleadings, the briefs, the report of the commissioners and any exceptions filed thereto by the parties, makes the final decision.
In Railroad Co. v. Swasey, 90 U. S., 405, 410, the court said:
“A master’s report settles no rights. Its office is to present the case to the court in such a manner that intelligent action may be there had, and it is this action by the court, not the report, that finally determines the rights of the parties.”
Petitioners in cases such as this are afforded a complete and adequate hearing on these matters before the Master Com *285 missioners. It is completely within the discretion of the Supreme Court as to how7 hearings on original actions shall be conducted, and the reference to commissioners does not constitute a denial of due process. State, ex rel. Abeille Fire Ins. Co., v. Sevier, supra. It is clear that petitioner’s motion was properly overruled.
We come now to the merits of petitioner’s case. Basically, it is his contention that he has a constitutional right to represent himself, and that the refusal of the court to allow him to do so constituted such a denial of rights as to entitle him to release by means of habeas corpus.
Here we have the converse of the usual situation where a petitioner is complaining of the failure of a court to appoint counsel to act on his behalf.
In this case, the question is whether a court can insist that an accused be represented by counsel even though such accused demands the right to represent himself.
It is the general rule that in the absence of unusual circumstances an accused who is mentally competent and sui juris has the right to conduct his own defense without the aid of counsel. Annotation, 77 A. L. R. (2d), 1233; and 23 Corpus Juris Secundum, 927, Criminal Law, Section 979(4). In other words, a lawyer may not be forced upon an accused under ordinary circumstances.
However, there must necessarily repose in the trial court a certain discretion in these matters. If the mental condition of an accused is such, either by mental derangement or by lack of knowledge, that the court feels that the accused would be incompetent to conduct his own defense and thus be deprived of a fair trial, or the gravity of the offense is such that it carries a severe penalty, the court may, in the interest of justice or if it feels it necessary in order to protect the judicial process from deterioration, appoint counsel to represent the accused. People v. Burson, 11 Ill. (2d), 360; and People v. Mitman, 7 Cal. Rep., 712.
Therefore, if a trial court determines that an accused is incompetent to defend himself, the court even over his protests may appoint counsel to represent him.
The present case involved a charge of armed robbery, an *286 offense which carries a penalty of 10 to 25 years in the penitentiary. The court had an opportunity during petitioner’s first trial to observe petitioner and judge his ability to conduct his own defense. Clearly, the court determined that in order to secure a fair trial petitioner needed professional assistance. Under such circumstances, considering the gravity of the offense and the opportunity the trial court had to observe the capabilities of the accused, its refusal to permit petitioner to try his own case without benefit of counsel deprived petitioner of no constitutional rights. Neither did the appointment of the counsel who had represented petitioner during his first trial deprive him of any rights. Petitioner apparently claims he had discharged this attorney because of a disagreement with him. If this was true, it apparently was not brought to the court’s attention. Petitioner has attached to his brief a letter from the trial judge stating that he knew of no such differences of opinion. Petitioner, by his own evidence, controverts any claim he may make in this respect.
Petitioner raises a question as to the refusal of the attorney to file a motion for a new trial. Although it is not apparent who filed such motion, the journal shows that a motion for a new trial was filed and overruled in this instance. To this extent petitioner’s post-trial rights were protected, and he has no valid complaint in that matter. There is nothing to show that petitioner was in any way prevented from prosecuting his appeal from his conviction; in fact, petitioner may still, if he so desires, file a motion for leave to appeal in the Court of Appeals. Petitioner has shown no basis for relief by habeas corpus on these grounds.
Petitioner has shown no deprivation of any constitutional right nor any lack of jurisdiction of the trial court.

Petitioner remanded to custody.

Taft, C. J., Zimmerman, Matthias, O’Neill, Griffith, Herbert and Gibson, JJ,, concur,